IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IRONSHORE SPECIALTY INSURANCE COMPANY, | ) ) ) | CASE NO. 3:18-cv-153 |
|---|---|---|
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) | |
| v. | ) ) | |
| CONEMAUGH HEALTH SYSTEM, INC. and JOHN O. CHAN, M.D., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

I. Introduction

This lawsuit arises out of a dispute over the extent of the coverage of a professional liability insurance policy (the "Ironshore Policy"). Before the Court is Plaintiff Ironshore Specialty Insurance Company's ("Ironshore") Motion for Reconsideration (ECF No. 96). This Motion is fully briefed (*see* ECF Nos. 97, 102, 105, 117-1) and ripe for disposition. For the reasons that follow, the Court **DENIES** Ironshore's Motion.

II. Jurisdiction and Venue

This Court has jurisdiction over the action because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Venue is proper because a substantial part of the events giving rise to this action occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391.

III. Factual Background

The facts in this case are complex and convoluted; accordingly, the Court will only recount those facts necessary to understand the present dispute. The Court detailed the facts

extensively in its Memorandum Opinion of November 14, 2019 (the Court's "Prior Order"). (ECF No. 91.)

Ironshore issued the Ironshore Policy to Defendant Conemaugh Health System, Inc. ("Conemaugh Health"), and through Conemaugh Health, to one of its physicians, Dr. Chan (collectively, "Conemaugh"). (ECF No. 12 ¶ 1.) Ironshore filed the Complaint in this case after a jury returned a verdict of $47,033,579—which this Court subsequently remitted to roughly $19,000,000—in another lawsuit against Conemaugh.[1]

In 2015, Conemaugh was sued in a medical malpractice action in this Court. (ECF No. 40 ¶¶ 78, 80.) At the time of the lawsuit, Conemaugh had several layers of insurance for medical malpractice cases. (*Id.* ¶¶ 69–71.) Ironshore was Conemaugh's excess carrier—an insurer whose coverage remains unused unless a verdict or settlement exceeds the coverage limits of the underlying, primary insurance policy. (*Id.* ¶¶ 72, 73.)

During the litigation of the underlying lawsuit, Ironshore and Conemaugh were in intermittent contact, resulting in confusion between the parties. (*See* ECF No. 91 at 6–9.) The parties dispute the extent of this lack of communication, as well at its potential willfulness, which gives rise to the instant dispute. (*See id.*) As shortly as a few weeks prior to trial, it was not clear that any verdict in the underlying case would implicate the Ironshore Policy. (*Id.* at 8–9.) At trial, the jury rendered a verdict in excess of $40 million against Conemaugh, which triggered the Ironshore Policy. (*Id.* at 10.) This Court later remitted that verdict to approximately $19 million. (*Id.*) The parties settled the lawsuit shortly after this Court remitted the verdict, with Ironshore paying the amount in excess of Conemaugh's primary insurance

---

[1] That case is *Harker v. Chan*, No. 3:15-cv-277 (W.D. Pa. filed Oct. 29, 2015)

policies (the "Ironshore Excess"). (*Id.*) Ironshore paid the excess amount contingent on its right to recoup payment, to which Conemaugh objected, and this dispute led to the instant lawsuit. (*Id.*)

## IV. Procedural Background

Ironshore filed the Complaint in this case on August 1, 2018. (ECF Nos. 1, 2.) Conemaugh filed a Motion to Dismiss on October 15, 2018, which this Court denied on March 1, 2019. (ECF Nos. 18, 33.) Following the denial of its Motion to Dismiss, Conemaugh filed an Answer and Counterclaim on April 10, 2019. (ECF No. 40.) Conemaugh's Counterclaim brought four counts: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) bad faith insurance practices under 42 Pa. C.S. § 8371; and (4) declaratory judgment. (ECF No. 40 ¶¶ 130–93.)

Ironshore then moved to dismiss Conemaugh's Counterclaim on April 26, 2019 (ECF Nos. 47, 48), which this Court denied in full on November 14, 2019 (ECF No. 91.) Ironshore moved for reconsideration on November 25, 2019. (ECF Nos. 96, 97.) Conemaugh responded on December 16, 2019. (ECF No. 102.) Ironshore sought and received permission to file a Reply on December 30, 2019. (ECF Nos. 103, 104, 105.) Conemaugh filed a Sur-Reply to Ironshore's Reply on January 17, 2020. (ECF No. 117-1.)

Ironshore seeks reconsideration of portions of this Court's Prior Order. (ECF No. 97 at 1.) Specifically, Ironshore asks this Court to vacate its November 14, 2019 Order and dismiss Counts One, Two, and Three of Conemaugh's Counterclaim. (ECF No. 96-1.)

## V. Legal Standard

Motions for reconsideration are limited vehicles used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Jackson v. City of Phila.*, 535 F. App'x 64, 69 (3d Cir. 2013) (quoting *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). For a litigant to succeed on a motion for reconsideration, the litigant must show that one or more of the following circumstances exist: (1) an intervening change in the controlling law; (2) new evidence is available that was not when the court made the prior decision; or (3) there is a need to correct a manifest injustice or a clear legal or factual error in the prior decision. *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014).

The purpose of a motion for reconsideration is not so that a litigant can get a do-over on an issue that party has already raised. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995). Motions for reconsideration are not used for the purpose of relitigating or rehashing issues the Court has already decided, or rethinking a decision the Court has already made, correctly or incorrectly. *Roadman v. Select Specialty Hosp.*, No. 3:16-cv-246, 2019 WL 430499, at *3 (W.D. Pa. Feb. 4, 2019) (Gibson, J.). Because of the interests in finality, at the district court level, this court will grant motions for reconsideration only "sparingly." *Id.*

## VI. Discussion

Ironshore is only entitled to reconsideration if it establishes that relief is justified based on (1) an intervening change in the law; (2) the availability of new evidence; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Schumann*, 769 F.3d at 848–49 (quoting *Max's Seafood Café*, 176 F.3d at 677) (internal quotation marks omitted). Ironshore appears to base its motion on the need to correct a clear error of law with regard to this Court's

decisions on two issues: (1) whether Conemaugh adequately pleaded a cause of action for bad faith under 42 Pa. C.S. § 8371; and (2) whether Conemaugh has properly pleaded non-speculative and non-contingent damages. (ECF No. 97 at 1.) The Court will address each in turn.

### A. The Court Denies Ironshore's Motion for Reconsideration of Its Ruling on Conemaugh's § 8371 Claim

#### 1. The Parties' Arguments

Ironshore argues that this Court's holding that Conemaugh does not need to plead a denial of benefits is contrary to Pennsylvania law. (ECF No. 97 at 3.) Ironshore asserts that to state a bad faith claim, Pennsylvania law requires that the plaintiff plead a denial of benefits and that Conemaugh has not alleged any such denial. (*Id.* at 3–4.) Ironshore argues that it timely paid the Ironshore Excess, and that its reservation of rights did not constitute the requisite denial of benefits to allow a § 8371 claim to go forward. (*Id.* at 4.) Ironshore contends that this Court is the only Pennsylvania court to conclude to the contrary. (*Id.* at 4–5.) Ironshore also argues that every decision holding that an insurer acted in bad faith involved either a denial of payment or a delay in payment tantamount to a denial. (ECF No. 105 at 2.) Ironshore maintains that it presented the Court with its delay theory in its briefing on its initial Motion to Dismiss, and that it is therefore not inappropriately introducing new legal theories in an effort to relitigate the Court's prior decision. (*Id.* at 2–3.) Ironshore maintains that an insurer cannot be liable under § 8371 until it has an obligation to defend the insured, and that this obligation did not arise until after this Court remitted the verdict. (ECF No. 97 at 6.)

-5-

Conemaugh responds that Ironshore is attempting to press a different theory upon the Court in its Motion than it advanced in its Motion to Dismiss and that a motion for reconsideration is not the proper arena to advance new arguments. (ECF No. 102 at 4–5.) Conemaugh contends that Ironshore is arguing that, as long as an insured timely pays the benefits of the coverage, even with a reservation of rights, the insurer cannot be liable for bad faith, even if it engaged in practices that might otherwise constitute bad faith. (*Id.* at 5.)

Conemaugh further argues that its pleadings establish that Ironshore's conduct amounted to a denial, even though such denial was not outright. (ECF No. 117-1 at 2.) Conemaugh asserts that Ironshore placed its interests above Conemaugh's in filing the instant lawsuit, and engaged in bad faith conduct in litigating this action, amounting to an effective denial of coverage. (*Id.* at 3.) In communications to Conemaugh, Ironshore disputed its obligation to pay the Ironshore Excess, conduct Conemaugh argues is a denial of benefits. (*Id.* at 3–4.)

Finally, Conemaugh maintains that Ironshore misreads the § 8371 standard, arguing that the cases Ironshore relies upon do not support Ironshore's arguments. (*Id.* at 4.) Conemaugh contends that Pennsylvania law has not clearly defined the exact contours of conduct that can give rise to a § 8371 claim, and that the law does not require an outright denial as a precondition of stating a § 8371 claim. (*Id.* at 4–5.) Conemaugh then avers that several recent decisions support its reading of Pennsylvania law. (*Id.* at 5–7.)

### 2. Conemaugh Has Pleaded A Bad Faith Claim

Ironshore contends that this Court has misread Pennsylvania bad faith law, specifically *Rancosky v. Washington National Insurance Co.*, 170 A.3d 364 (Pa. 2017). (ECF No. 97 at 3.)

Ironshore avers that *Rancosky* requires that, to state a § 8371 claim, the plaintiff must allege that the insurer has denied benefits under the policy. (*Id.* at 3–4.) Ironshore argues, however, that only either a refusal to pay benefits or a delay in paying benefits that becomes an effective denial can constitute a denial of benefits sufficient to state a claim under § 8371. (*Id.* at 4; ECF No. 102 at 1–2.)

Ironshore's argument, however, ignores the fact that nowhere in *Rancosky* did the Pennsylvania Supreme Court state that either a refusal to pay benefits or a delay in paying benefits was required before an insured could state a § 8371 claim. *Rancosky* stated that, to plead a § 8371 claim, the plaintiff must show that the insurer lacked reasonable basis for "denying benefits under the policy" and that the insurer knew of or recklessly disregarded that lack. 170 A.3d at 377. *Rancosky* only laid out the standard by which Courts were to analyze § 8371 claims—a denial of benefits. *Id.* at 365. Nowhere does *Rancosky* state that an insurer must refuse to pay, or have an unreasonable delay in paying, only that some denial of benefits occur. *Id.* However, in his concurring opinion, which the majority did not refute, Justice Wecht listed several types of conduct, including poor claims-handling, a failure to respond to the insured, and other similar conduct, which could give rise to a § 8371 claim and that list is broader than a refusal or delay in paying benefits. *See* 170 A.3d at 379 (Wecht, J., concurring). Conemaugh pleaded that Ironshore engaged in these types of conduct. (*See* ECF No. 40 ¶¶ 69–129.) Accordingly, this Court remains convinced that the Pennsylvania Supreme Court, if confronted with the issue that Ironshore raised in its Motion to Dismiss, would hold that Conemaugh had stated a claim. Furthermore, Conemaugh pleaded that it met all the conditions of the Ironshore Policy, entitling it to the benefit of coverage, of which Ironshore has now deprived Conemaugh,

-7-

by acting in bad faith by its conduct in this lawsuit. (*See* ECF No. 40 ¶¶ 171–173.) These allegations are sufficient under *Rancosky* to state a claim, and the Court accordingly denies Ironshore's Motion.

### B. The Court Denies Ironshore's Motion for Reconsideration of Its Ruling on Conemaugh's Contract Claims

#### 1. The Parties' Arguments

Ironshore avers that it is entitled to reconsideration because a plaintiff must prove a claim for contract damages with reasonable certainty, but that this Court based its decision upon speculative damages. (ECF No. 97 at 6.) Ironshore argues that Conemaugh never pleaded that it suffered any of the potentially identifiable damages that this Court listed in its Prior Order. (*Id.* at 6–7.) Ironshore asserts that Conemaugh's attempts to distinguish between damages that Conemaugh must prove with reasonable certainty and those that need be identifiable are irrelevant because Conemaugh's pleading only asserts speculative damages. (ECF No. 105 at 4.) Ironshore maintains that Conemaugh's briefing on this issue sets forth new damages that it never pleaded in its Counterclaim. (*Id.*) Ironshore further contends that although Conemaugh may be entitled to nominal damages, Conemaugh must still plead facts that raise a right to relief that is more than plausible and Conemaugh has failed to do so. (ECF No. 97 at 7–8.)

Conemaugh replies that, at the pleading stage of litigation, it need only plead that it suffered damages as a result of Ironshore's breach of the insurance contract. (ECF No. 102 at 7–8.) Conemaugh concedes that some of its damages may be difficult to prove with reasonable certainty but argues that its damages are identifiable, which is all that matters at this stage in

-8-

the litigation. (*Id.* at 8.) Conemaugh argues that its pleadings properly allege that it met all the conditions of the insurance contract, that Ironshore refused to abide by those terms, and that Conemaugh has suffered damages as a result of Ironshore's refusal. (*Id.*) Conemaugh also argues that Ironshore raised the issue of nominal damages and argued it in briefing its Motion to Dismiss, the Court denied the Motion, and therefore the Court should disregard Ironshore's argument. (*Id.* at 10.)

Conemaugh also responds that, because Ironshore commenced the instant action prior to paying the Ironshore Excess, Conemaugh has put the amount of the Ironshore Excess into controversy as potential damages. (ECF No. 117-1 at 8.) Ironshore's pleadings alleged that Conemaugh had breached the Ironshore Policy and prejudiced Ironshore's rights, causing a controversy in the amount of the Ironshore Excess. (*Id.*) Conemaugh argues that it faces the same controversy: whether Conemaugh is obligated to return the Ironshore Excess. (*Id.*)

### 2. Conemaugh Has Pleaded Identifiable Damages

Ironshore's argument in the instant dispute relies upon Conemaugh having pleaded only speculative damages. (ECF No. 97 at 6–7.) Accordingly, the Court will recount Conemaugh's allegations regarding breach of contract:[2] (1) Conemaugh met all terms and conditions the Ironshore Policy required (ECF No. 40 ¶ 133); (2) Conemaugh satisfied all of its obligations under the Ironshore Policy (*id.* ¶ 138); (3) the Ironshore Policy required Ironshore to provide coverage in circumstances such as the underlying lawsuit (*id.* ¶139); (4) Ironshore breached the Ironshore Policy (*id.* ¶ 140); (5) Ironshore's breach caused Conemaugh to suffer

---

[2] Ironshore also argues that Conemaugh's breach of the implied covenant of good faith and fair dealing fails for failure to properly allege damages. (ECF No. 97.) Since the substance of these arguments, at least as they relate to damages, is the same, the Court will address them together.

damages "including legal and other directly related expenses" (*id.* ¶ 141); and (6) Ironshore's breach and subsequent filing of its claim in recoupment of the Ironshore Excess "prospectively damaged" Conemaugh. (*id.* ¶ 142.)

These allegations state a plausible claim of breach of contract and the Court accordingly denies Ironshore's Motion. The Court has previously addressed this issue at length in its Prior Order (*see* ECF No. 91 at 14–16.) and concluded that Ironshore's argument fails. However, the Court will briefly revisit the issue. Conemaugh's allegations state that Ironshore, through its actions, has damaged Conemaugh directly by causing added expense and through filing this lawsuit seeking recoupment. (ECF No. 40 ¶¶ 133–42.) These are not speculative damages. The fact that Conemaugh has not identified with exactitude the damages it has suffered is not dispositive. Determining the amount of damages is often not easy until the parties have undergone discovery and expecting Conemaugh to plead an exact amount in its Counterclaim goes well above and beyond the required plausibility standard of *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Further, to the extent that Ironshore contends that this Court invented Conemaugh's damages for Conemaugh (*see* ECF No. 97 at 6–7.), Conemaugh alleged that it had suffered expenses "directly related" to Ironshore's actions. The Court noted that Conemaugh might have had to purchase further insurance only as an example of what might constitute a "directly related" expense. (ECF No. 91 at 16 ("For instance, Conemaugh may have suffered damages from being forced to obtain additional insurance").) The Court notes, as it noted before, that damages in a breach of contract action need not be determined to a specific dollar amount—they need only be identifiable, *i.e.*, capable of ascertainment. *Printed Image of York, Inc. v. Mifflin Press, LTD.*, 133 A.3d 55, 60 (Pa. 2016) (quoting *Newman Dev. Grp. of Pottstown, LLC v.*

*Genuardi's Family Mkt., Inc.*, 98 A.3d 645, 661 (Pa. Super. Ct. 2014)). Conemaugh's allegations give rise to plausible damages that are capable of ascertainment. At this stage in the litigation, Conemaugh need plead no more.

## VII. Conclusion

For the foregoing reasons, the Court denies Ironshore's Motion for Reconsideration.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IRONSHORE SPECIALTY INSURANCE COMPANY, | ) ) ) | CASE NO. 3:18-cv-153 |
|---|---|---|
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CONEMAUGH HEALTH SYSTEM, INC. and JOHN O. CHAN, M.D., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 22nd day of January, 2020, upon consideration of Ironshore's Motion for Reconsideration (ECF No. 96), **IT IS HEREBY ORDERED** that the Motion is **DENIED.**

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE